| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 | |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 50, filed April 28, 2017)

## I.   INTRODUCTION

On June 17, 2015, plaintiff Allen Bernard Shay filed this action against defendants County of Los Angeles ("the County"), Los Angeles County Sheriff's Department ("LACSD"), Christopher Derry, and Does 1–10.  Dkt. 1.

On September 25, 2015, defendants filed a motion to dismiss plaintiff's first amended complaint for failure to state a claim.  Dkt. 20.  On October 26, 2015, the Court granted defendants' motion, in part, and denied the motion, in part, and also granted plaintiff leave to amend.  Dkt. 23.  Plaintiff filed a second amended complaint on November 4, 2015.  Dkt. 24 ("SAC").

Plaintiff asserts claims against all defendants for violation of his civil rights under 42 U.S.C. § 1983 (West 1996) and California's Bane Civil Rights Act, California Civil Code § 52.1 (West 2014) (the "Bane Act").  SAC ¶¶ 36–55.  He also asserts a false imprisonment claim against Deputy Derry.  SAC ¶¶ 56–57.

On April 28, 2017, defendants filed a motion for summary judgment.  Dkt. 50 ("MSJ").  Plaintiff filed his opposition to the MSJ on April 15, 2017, dkt. 57 ("Opp'n"), and defendants filed their reply on May 22, 2017, dkt. 63 ("Reply").  The parties appeared for oral argument on June 5, 2017.

| CIVIL MINUTES – GENERAL | | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

## II.    BACKGROUND

The following facts are not in dispute.[1]

Plaintiff is a licensed real estate broker.  Dkt. 58, Pl.'s Statement of Genuine Issues in Resp. to Defs.' Statement of Uncontroverted Facts ("Pl.'s SUF") No. 6.  In the early 2000s, he reconnected with Eddie Turner, whom he had first met in 1978 when they were both very young.  SUF No. 4; Dkt. 59, Decl. of Pl. Allen Shay ("Pl. Decl.") ¶ 8.  At the time plaintiff reconnected with Turner, Turner was purchasing and rehabilitating residential homes throughout Southern California and selling them for profit.  Pl. Decl. ¶ 8.  The two men became close friends and worked on several real estate transactions together.  Id.

In January of 2005, Turner purchased a home located at 2436 North Altadena Drive in Altadena, California, for $1,120,000 (the "Altadena House").  Id. ¶ 9.[2]  Plaintiff was the real estate broker for the transaction.  Id.  Turner financed a portion of the purchase price of the house with a negative amortization adjustable-rate mortgage from Countrywide Home Loans ("Countrywide") in the amount of $896,000.  Id.  Eight months later, Turner obtained a $250,000 home equity line of credit from Countrywide (together, with the $896,000 loan, the "2005 Loans"), secured by a second mortgage on the Altadena House.  Id.  Countrywide employee Jeffrey Gleason was the loan officer for both transactions.  Id.  Plaintiff was not a party to any of the 2005 Loans and did not have

---

[1] Defendants have submitted a statement of undisputed facts in support of their motion for summary judgment.  Dkt. 50-6.  Plaintiff objects to the way several of the facts are phrased, but does not dispute the substance of the facts.  Pl.'s SUF Nos. 10, 12–13, 15–16, 20, 22, 26–27, 29, 30.  These are not valid objections under Rule 56.

[2] Defendants object to statements in paragraphs 2–4 and 22–23 of plaintiff's declaration on the grounds they are irrelevant.  Defs.' Obj. to Evid.  The Court sustains defendants' objection, as none of the statements have any tendency to make any fact of consequence to the issues in the MSJ more or less probable.  See Fed. R. Evid. 401.  Defendants also object to statements in paragraphs 6 and 21 of plaintiff's declaration on the grounds they are speculative, irrelevant, lack foundation, and constitute inadmissible hearsay and to statements in paragraph 24 on the grounds that they are speculative and lack foundation.  Because the Court does not rely on any of these statements, the Court need not reach these objections.

**CIVIL MINUTES – GENERAL**   '**O**'   JS-6

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|---|---|---|---|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

any financial responsibility for the Altadena House; he was merely the real estate broker for the purchase and sale transaction.

By 2007, the interest rate on the 2005 Loans had adjusted upwards, making the monthly payments significantly larger. Dkt. 60, Decl. of Erin Darling ("Darling Decl.") ¶ 4, Exs. I–J[3] (together, the "Warrant App. Docs.") at 58. Accordingly, in March 2007, Turner made arrangements with Gleason to refinance the 2005 Loans with Countrywide. Warrant App. Docs. at 49–50. Per the terms of the refinancing transaction, Turner acquired two new loans from Countrywide totaling $1,218,000 (the "2007 Loans") and paid off the balance of the 2005 Loans. Pl.'s SUF No. 8; Warrant App. Docs. at 58.

Turner submitted false income and employment information to Countrywide in connection with the refinancing transaction. Pl.'s SUF No. 13; Warrant App. Docs. at 58–60. He also submitted counterfeit bank statements. Pl.'s SUF No. 13; see also Darling Decl. ¶ 8, Ex. N, Prelim. Hr'g Trans. at 26:6–28:2.[4] The fax number at the top of

---

[3] Defendants object to paragraph 4 of the Darling declaration, in which Darling attempts to authenticate Exhibit J, on the grounds he has not properly authenticated the documents, rendering them inadmissible hearsay. Defs.' Obj. Evid. Darling proffers Exhibit J as the documents submitted in support of Deputy Derry's request for an arrest warrant to the judge who issued the warrant for plaintiff's arrest. Darling Decl. ¶ 4, Ex. J. Exhibit J contains the following documents: (1) Deputy Derry's Declaration in Support of an Arrest Warrant for plaintiff and Turner, as well as Felony Bail Computation Worksheets for each suspect and Countywide Warrant System Initial Case Filing Forms for each suspect, see Ex. J at 18–23; (2) the police report Turner filed for identify theft, see Ex. J at 25–28; (3) The latent print examination report from the LACSD Scientific Services Bureau, see Ex. J at 30–31; and (4) several LACSD Supplemental Reports created by Detective Williams and Deputy Derry, see Ex. J at 33–65. Defendants also generally object to Exhibit J, in its entirety, arguing the documents in the exhibit contain inadmissible hearsay. The Court does not reach these objections because they are moot, as defendants withdrew the objections at the hearing on the MSJ.

[4] Defendants object to paragraphs 8–10 of the Darling declaration on the grounds that Darling lacks personal knowledge to authenticate the documents in Exhibits N–O. Dkt. 64. Defendants also contend the information in the exhibits is irrelevant. The Court overrules these objections. Exhibit N is a transcript from a court proceeding, and the transcript contains a stamp from the Superior Court of the State of California indicating it

| CIVIL MINUTES – GENERAL | | 'O'   JS-6 | |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

the counterfeit bank statements indicate the documents were faxed to Countrywide from a machine at plaintiff's office — Allen Shay & Associates.  Pl.'s SUF No. 13.

Because there was a difference between the total amount of the 2007 Loans and the balance of the 2005 Loans, as well as fees associated with the refinancing transaction, Turner had to pay Countrywide $29,916.43.  Ex. N. 142–43.  Plaintiff opened an escrow account with Mara Escrow to facilitate Turner's payment to Countrywide.  Pl's SUF No. 7.  Turner deposited a cashier's check from Washington Mutual for $29,916.43 into the escrow account to close the refinancing transaction.  Pl.'s SUF No. 9.  After the transaction closed, Turner began making payments on the 2007 Loans.  Warrant App. Docs. at 36.

In 2008, Turner defaulted on the 2007 Loans.  Warrant App. Docs. at 36. According to Turner, he owned several rental properties at the time and the economic conditions present in 2008 were such that he could no longer afford to make payments on the 2007 Loans for the Altadena House.  Warrant App. Docs. at 36.  After Turner failed to make payments, Bank of America (which had purchased Countrywide) initiated foreclosure proceedings against Turner.  Warrant App. Docs. at 41.  Turner filed for bankruptcy protection in 2009 and the bankruptcy was discharged in 2010.  Warrant App. Docs. at 36, 39.  The 2007 Loans were listed as a liability on a schedule attached to the bankruptcy application.  Warrant App. Docs. at 36, 39.  Turner remained in possession of the Altadena House after the bankruptcy.  Warrant App. Docs. at 36, 39

On March 18, 2012, Turner filed a police report with the LACSD claiming he was a victim of identity theft.[5]  Pl.'s SUF No. 14.  In the report, Turner stated he contacted Bank of America on December 22, 2011 to discuss a loan modification for the Altadena

---

is a conformed copy.  It also contains a signed certification from the court reporter who prepared the transcript.  Exhibits O and P are also transcripts from proceedings in the Superior Court of the State of California.  Accordingly, the Court finds the exhibits are self-authenticating under Federal Rule of Evidence 902(4), and (8).  The exhibits are also relevant to the issue of whether plaintiff was illegally deprived of his constitutional rights.  See Fed. R. Evid. 401.

[5] Turner also filed a lawsuit in Los Angeles County Superior Court, Case No. GC049341, against Bank of America and Gleason related to the identity theft.  See Warrant App. Docs. at 33.

**CIVIL MINUTES – GENERAL**     **'O'**    **JS-6**

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|----------|--------------------|------|--------------|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

House. Warrant App. Docs. at 27. Bank of America subsequently sent Turner a copy of the deed of trust on the house, and Turner noticed a discrepancy. Warrant App. Docs. at 27. According to Turner, he purchased the Altadena House in 2005 and signed and dated the deed of trust at that time. Warrant App. Docs. at 27. When he reviewed the deed of trust Bank of America sent him, however, he noted the document was signed with his name and dated 2007. Warrant App. Docs. at 27. Turner claimed the signature on the document was not his. Warrant App. Docs. at 27. Thus, Turner asked Bank of America for a copy of the loan applications related to him and the Altadena House. Warrant App. Docs. at 27. When he received the documents, he saw the applications submitted in March 2007 related to the 2007 Loans. Warrant App. Docs. at 27. Turner claimed he did not secure the 2007 Loans. Pl.'s SUF No. 14.

Detective Tim Williams was initially assigned as the lead detective to investigate Turner's identity theft claim. Pl.'s SUF No. 15. Deputy Derry, a Los Angeles County Deputy Sheriff assigned as an investigator in the fraud and cybercrimes bureau in the LACSD's real estate unit, took over as the lead detective when Detective Williams retired. Pl.'s SUF No. 16; Ex. N at 104. After taking over the investigation, Deputy Derry uncovered evidence that strongly suggested Turner had personally secured the loans and was lying to the police. Ex. N at 109. Accordingly, Deputy Derry obtained a search warrant for all of Bank of America's files related to the 2005 and 2007 loans on the Altadena House, all of Mara Escrow's files related to the 2007 refinancing transaction, and Turner's financial records. Warrant App. Docs. at 55–60.

Deputy Derry also discovered during the investigation that plaintiff, not Turner, purchased the cashier's check Turner used to close the refinancing transaction. Pl.'s SUF Nos. 10, 17. Plaintiff paid for the cashier's check using funds from a home equity line of credit plaintiff had taken out with Washington Mutual against his personal residence (plaintiff's "personal HELOC account"). Pl.'s SUF Nos. 10, 17. Deputy Derry noted the face of the cashier's check listed "Mara Escrow" as the payee and Turner as the remitter. Pl.'s SUF No 10. The cashier's check also referenced the number of the escrow account associated with Turner's refinancing transaction. Pl. SUF No. 12. When Deputy Derry interviewed plaintiff, he asked plaintiff about the cashier's check. Pl.'s SUF Nos. 22–24. Plaintiff said he did not recall purchasing the check. Pl.'s SUF Nos. 22–24. Plaintiff suggested Gleason may have taken money from plaintiff's personal HELOC account to purchase the cashier's check and replaced the money before plaintiff noticed it was missing. Pl.'s SUF Nos. 22–24.

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|---|---|---|---|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

On May 1, 2014, Deputy Derry executed a Felony Complaint for Arrest Warrant ("Felony Complaint") for Turner and plaintiff. Warrant App. Docs. at 6–16. The Felony Complaint was also executed by Deputy District Attorney Walter Mueller, an attorney in the real estate fraud division of the District Attorney's Office. Warrant App. Docs. at 6–16. The Felony Complaint alleges plaintiff violated California Penal Code §§ 487(a), which pertains to grand theft, and 115(a), which pertains to forging or filing a false document. Warrant App. Docs. at 6–16. Deputy Derry submitted two declarations in support of the request for the arrest warrants, one for each suspect. Warrant App. Docs. at 18–19. Mueller also attached thirty-one pages of documents from Deputy Derry's investigative file in support of the Felony Complaint (together, with the Felony Complaint and two declarations, the "Warrant Application"). Decl. of John Burton ¶ S, Ex. S, Dep. Trans. Deputy Derry 157:4–58:7; Warrant App. Docs. 18–19. Deputy Derry delivered the Warrant Application to a state court judge. Dep. Trans. Deputy Derry at 158:4–23. After reviewing the Warrant Application, the Honorable Roberto Longoria, a judge of the Los Angeles Superior Court, issued a warrant for plaintiff's arrest. Dkt. 50-3, Decl. of Deputy Derry ("Derry Decl.") ¶ 11; Dkt. 50-7, Ex. A, Minute Order.[6]

On May 1, 2014, Mueller also submitted an ex parte motion to examine the source of any bail funds offered on plaintiff's behalf. Darling Decl. ¶ 5, Ex. K, Ex Parte Mot. to Examine Source of Bail ("Bail Mot.") 73–76. In the motion, Mueller requested the court issue an order that no bail funds would be accepted on plaintiff's behalf until a hearing occurred to determine whether any of the funds were obtained feloniously. Bail Mot. 73. Deputy Derry submitted a declaration in support of Mueller's motion. Bail Mot. 74. Paragraph Two of the declaration states: "After a review of the facts in this matter, I believe that the defendant has had access to significant amounts of monies feloniously obtained from theft." Bail Mot. 74. A box was also checked on the declaration directing the reviewing party to see attached reports. Bail Mot. 74. Deputy Derry also submitted a document entitled "Felony Bail Computation Worksheet" related to plaintiff in connection with the Warrant Application. Warrant App. Docs. at 21. The worksheet lists the crimes plaintiff was charged with and indicates the bail amount, per the pre-printed calculations on the worksheet, was $190,000. Warrant App. Docs. at 21. Judge Longoria

---

[6] Defendants request the Court take judicial notice of the Minute Order issued in response to the Warrant Application Deputy Derry submitted to Judge Longoria. Dkt. 50-7. The Court grants the request and takes judicial notice of the document pursuant to Federal Rule of Evidence 201.

| | CIVIL MINUTES – GENERAL 'O' JS-6 | | |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

approved the ex parte application and issued an order applying the bail hold on the date it was submitted. Minute Order.

Deputy Derry arrested plaintiff on May 20, 2014. SAC ¶ 22. That same day, Deputy Derry and the LACSD issued a press release regarding plaintiff's arrest. Pl.'s Decl. ¶ 4, Ex. A ("Press Release") at 1. The press release stated plaintiff and Turner allegedly submitted a counterfeit bank statement in connection with the refinancing transaction. Press Release at 1. It also stated plaintiff and Turner misrepresented the "source of a $29,916 down payment which was deposited into escrow to obtain" the loans used in the refinancing transaction. Press Release at 1. According to the press release, plaintiff and Turner fraudulently obtained loans totaling $2,364,000. Press Release at 1.

On May 30, 2014, plaintiff appeared in Los Angeles County Superior Court before the Honorable Robert C. Vanderet for a bail hearing. Darling Decl. ¶ 10, Ex. P, Bail Hr'g Trans. at 237:16–28. At the hearing, Judge Vanderet lifted the hold and agreed to prepare an order permitting a friend of plaintiff's to post bond on plaintiff's behalf. Hr'g Trans. at 238:13–251:28.

Plaintiff subsequently appeared before Judge Vanderet for a preliminary hearing (the "Preliminary Hearing"). Prelim. Hr'g Trans. at 1:23–28. On September 11, 2014, after the district attorney presented its evidence, plaintiff's counsel asked Judge Vanderet to dismiss all four charges against plaintiff because there was insufficient evidence to support the charges. Darling Decl. ¶ 9, Ex. O, Second Prelim. Hr'g Trans. at 2:13–6:28. Judge Vanderet commented that he did not think the evidence presented met the standard of providing a strong suspicion that plaintiff attempted to mislead Countrywide or aided and abetted Turner in misleading Countrywide. Second Prelim. Hr'g Trans. 2:13–6:28. Accordingly, Judge Vanderet declined to hold plaintiff to answer to the charges against him. Second Prelim. Hr'g Trans. 6:27–28. Judge Vanderet did, however, think there was sufficient evidence to require Turner to answer the charges against him. Second Prelim. Hr'g Trans. 7:1–8:24. Turner was ultimately convicted of fraud. Pl. Decl. ¶ 8.

| | CIVIL MINUTES – GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

### A.    Violation of Section 1983 (Deputy Derry)

Plaintiff alleges Deputy Derry violated his rights under the Fourth and Fourteenth Amendments by: (1) filing a false and misleading Warrant Application for plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 | |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | | |

arrest; (2) filing an application for an arrest warrant without probable cause; (3) arresting plaintiff without probable cause; (4) defaming plaintiff in a press release and in other public statements based on false arrest and detention; (5) prolonging plaintiff's incarceration by lying and concealing material facts about the source of funds available for bail; (6) causing plaintiff's malicious prosecution and (7) acting in an intentionally discriminatory manner toward plaintiff based on plaintiff's race. SAC ¶¶ 36–38. The Court addresses each alleged violation below. See Soldal v. Cook Cty., Ill., 506 U.S. 56, 70 (1992) (stating that where a plaintiff alleges multiple constitutional violations, a court must examine each one separately).

## 1.    Fourth Amendment

Plaintiffs' claims against Deputy Derry for violation of his Fourth Amendment rights are rooted in his contentions that: (1) the Warrant Application did not contain sufficient facts to permit Judge Longoria to decide there was probable cause to arrest him, and it was unreasonable for Deputy Derry to believe the Warrant Application contained sufficient facts to provide probable cause; (2) Deputy Derry included false statements in the Warrant Application and Judge Longoria would not have issued the warrant if Deputy Derry had not included the false statements; (3) Deputy Derry arrested him without probable cause; and (4) Deputy Derry included defamatory statements in a press release regarding his unlawful arrest, which harmed his reputation and caused him financial losses. Opp'n at 10–17. Defendants counter that plaintiff has not set forth any evidence in support of these arguments and, thus, cannot satisfy his burden of proving the essential elements of his Section 1983 claims against Deputy Derry. MSJ at 6–8. Defendants also assert that Deputy Derry is entitled to qualified immunity as to plaintiff's claims. MSJ at 17–18.

The doctrine of qualified immunity shields Deputy Derry from civil liability so long as his conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation marks omitted). Thus, qualified immunity will apply unless (1) facts viewed in the light most favorable to plaintiff show Deputy Derry violated one of plaintiff's constitutional rights and (2) the right was clearly established at the time of Deputy Derry's alleged misconduct. See Ford v. City of Yakima, 706 F.3d 1188, 1192 (9th Cir. 2013) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)); see also Garcia v. Cnty. of Riverside, 817 F.3d 635, 639 (9th Cir. 2016). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what

| CIVIL MINUTES – GENERAL | | 'O'   JS-6 | |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

he [was] doing violate[d] that right." <u>Reichle v. Howards</u>, 556 U.S. 658, 132 S. Ct. 2088, 2093 (2012) (quotation marks and alteration omitted).

The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality," <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011) (citation omitted), but instead to consider "whether the violative nature of particular conduct is clearly established," <u>id.</u> at 742 (emphasis added); <u>see also</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) (per curiam) (noting that the relevant inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition" (quotation marks omitted)). While the law "do[es] not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." <u>al-Kidd</u>, 563 U.S. at 741; <u>see also</u> <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (per curiam) ("Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.") (quotation marks omitted)). The Supreme Court has reiterated that "[s]uch specificity is especially important in the Fourth Amendment context, where the Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine"—here, unlawful arrest and incarceration—"will apply to the factual situation the officer confronts." <u>Mullenix</u>, 136 S. Ct. at 308 (quotation marks omitted).

### a.     Probable Cause for the Arrest Warrant

"A private party may bring an action under Section 1983 to challenge an improperly issued arrest warrant." <u>Malley v. Briggs</u>, 475 U.S. 335, 338–42 (1986). "In a garden-variety false arrest claim challenging the probable cause for an arrest," the arresting officer "enjoys qualified immunity" if the "arrest warrant is facially valid," unless the "warrant application is so lacking in indicia of probable cause" as to render the officer's belief in its existence unreasonable. <u>Smith v. Almada</u>, 640 F.3d 931, 937 (9th Cir. 2011) (citing <u>Malley</u>, 475 U.S. at 342); <u>see also</u> <u>KRL v. Estate of Moore</u>, 512 F.3d 1184, 1190 (9th Cir. 2008) ("An officer who prepares or executes a warrant lacking probable cause is entitled to qualified immunity unless no officer of reasonable competence would have requested the warrant"). Plaintiff contends the Warrant Application did not contain sufficient information for Judge Longoria to determine there was probable cause to issue a warrant and, thus, his arrest was illegal. Opp'n at 10–13. Plaintiff also asserts that Deputy Derry is not entitled to qualified immunity because it was unreasonable for Deputy Derry to believe the information in the Warrant Application was sufficient to provide probable cause for his arrest. <u>Id.</u>

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 | |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | | |

"Probable cause does not require proof beyond a reasonable doubt of every element of a crime.  Rather, probable cause exists where[,] under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime." United States v. Noster, 590 F.3d 624, 629–30 (9th Cir. 2009) (citation omitted); see also Florida v. Harris, 568 U.S. 237, 133 S. Ct. 1050, 1055 (2013) ("The test for probable cause is not reducible to precise definition or quantification.  Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable cause] decision.  All we have required is the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act.") (citation and quotation marks omitted).

Where, as here, a neutral judge has issued an arrest warrant, a reviewing court examines the judge's decision to determine whether, under the totality of the circumstances, there was a "substantial basis" for the judge's finding that probable cause existed. See U.S. v. Castillo, 866 F.2d 1071, 1076 (9th Cir. 1988).  When conducting this review, a court is limited to the "four corners" of the documents submitted to the judge.  See id.  Because there is no dispute Judge Longoria issued the warrant after reviewing the Warrant Application, the Court confines its review to the information contained in these documents.  See Opp'n at 12; Dep. Trans. Deputy Derry 157:4–58:7; Derry Decl. ¶ 11.

The Warrant Application contains the following information regarding plaintiff's alleged involvement in procuring the fraudulent loans:

- Turner stated that he obtained records related to the 2007 Loan and "was able to determine that the money used to purchase the cashier's check, used as the earnest money deposit . . . toward the fraudulent loans, originated from an account held by [plaintiff].  Turner stated that [plaintiff] was his agent." Warrant App. Docs. at 36.

- Turner said he tried to sell a property, other than the Altadena House, in 2007.  Turner stated plaintiff was his agent in that matter and Marlene Stewart (of Mara Escrow) was conducting the escrow.  See Warrant App. Docs. at 36.

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 | |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | | |

- Marlene Stewart confirmed she knew plaintiff and that she had handled several escrows for transactions he was involved with. See Warrant App. Docs. at 46.

- Gleason confirmed he knew both Turner and plaintiff and had acted as their loan officer. See Warrant App. Docs. at 49. Gleason stated he had contact with plaintiff when Turner refinanced the loans on the Altadena House in 2007, as plaintiff assisted Turner with the loan process. See Warrant App. Docs. at 50. Gleason also noted he did not believe plaintiff was acting as Turner's broker with respect to the refinancing transaction because, at that time, Countrywide was "only dealing directly with clients." Warrant App. Docs. at 50.

- The file maintained by Bank of America related to Turner's refinancing transaction contained a fax, dated August 6, 2008, to Countrywide regarding an attempted short sale of the Altadena House. The fax was comprised of a letter of authorization, a sales contract, and other documents. The fax was sent from Shay & Associates. See Warrant App. Docs. at 59. The file also contained a second fax related to the potential short sale, which was faxed from Shay & Associates to Countrywide on May 29, 2008. See Warrant App. Docs. at 60.

- The file maintained by Bank of America related to Turner's refinancing transaction also contained Turner's bank statements for January 2007 from his Farmers Insurance Group Federal Credit Union account, which were faxed to Countrywide. A header on the statements shows the documents were faxed to plaintiff on February 19, 2007 and then faxed from Shay & Associates to Countrywide on February 20, 2007. The bank statements show Turner's bank balance exceeded $250,000; but, when the statements were compared to "true records from Farmers Insurance Group FCU, it [was] apparent that the records [were] counterfeit." Warrant App. Docs. at 59.

- Deputy Derry secured a search warrant to obtain JP Morgan Chase's ("JP Morgan") records related to plaintiff's Washington Mutual account (JP Morgan purchased Washington Mutual). The records contained a copy of

| CIVIL MINUTES – GENERAL | | | 'O'    JS-6 |
| --- | --- | --- | --- |
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

cashier's check #800392781, payable to Mara Escrow, in the amount of $29,916.43. The records also contained a copy of a statement of plaintiff's personal HELOC account activity from April 13, 2007 to May 2, 2007. After reviewing the records, Deputy Derry determined the cashier's check was purchased with funds from plaintiff's personal HELOC account. <u>See</u> Warrant App. Docs. at 62.

• Deputy Derry noted in a report regarding the JP Morgan file that "based on the records received from JP Morgan . . . , Mara Escrow, and Bank of America, along with statements from witnesses, it is apparent that Turner and [plaintiff] acted in concert, and made materially false and fraudulent representations to Bank of America (formerly Countrywide) . . . in order to obtain a $1,000,000 loan and a $218,000 loan on [March 30, 2007]. The loans went into default, and Turner has resided in the Altadena property, without making a payment, since January 2008. Therefore, the classification of Grand Theft 487(a) PC is being added to this case, and [plaintiff] is being named as a suspect." Warrant App. Docs. at 64.

• Deputy Derry interviewed the teller at Washington Mutual who sold plaintiff the cashier's check used to close escrow on the refinancing transaction. The teller stated she knew plaintiff but did not know Turner or Gleason. The teller acknowledged she created and issued the cashier's check for plaintiff and that the cashier's check was purchased with funds from plaintiff's personal HELOC account. The teller also stated plaintiff must have told her to identify Turner as the remitter of the check because she otherwise would not have styled the check that way. The teller further stated it was not against Washington Mutual's policy to identify someone as the remitter on the face of a cashier's check who did not actually purchase the check and that occasionally customers ask the bank to prepare cashier's checks in this manner. <u>See</u> Warrant App. Docs. at 65.

• Deputy Derry explained to the teller at Washington Mutual that plaintiff claimed he did not purchase the cashier's check and that plaintiff claimed Washington Mutual bank employees conspired with others to withdraw $29,916.43 from plaintiff's personal HELOC account, without his knowledge or consent, to fund the cashier's check, "making it appear as if it came from Turner." The teller said plaintiff's signature was on the

CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|----------|--------------------|------|--------------|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

withdrawal slip for the funds used to purchase the cashier's check and that plaintiff would have noticed a $29,916.43 debit from his personal HELOC account. See Warrant App. Docs. at 65.

Plaintiff does not dispute any of these facts are true except the statement that indicates plaintiff and Turner acted in concert and made materially false and misleading representations. See Opp'n at 13–15; Warrant App. Docs. at 64; see also Dkt. 50-4, Pl.'s Responses to Def. Derry's Interrog. Set One at 8. Rather, plaintiff's primary argument is that none of these facts describe "any criminal act" on plaintiff's part. Opp'n at 13. Indeed, in plaintiff's view, taken together, the information shows "Turner counterfeited bank records and submitted them to Countrywide" to facilitate the financing transaction, which is a violation of the penal code. Id. But, plaintiff asserts, the information "does not identify any record [plaintiff] falsified, any reason for [plaintiff] to believe Turner had falsified a record, or a single statement [plaintiff] made to Countrywide." Id. Moreover, plaintiff claims, the information "does not connect [plaintiff's] purchase of the cashier's check to any crime." Id.

Even viewing the facts in the light most favorable to plaintiff, the Court concludes that a rational trier of fact would not be able to determine that Judge Longoria did not have a sufficient basis to determine there was probable cause. Although plaintiff is correct there is nothing in the Warrant Application that directly states plaintiff committed a crime, this is not required, as the information in a warrant application does not have to make a "prima facie showing" of criminal activity. Illinois v. Gates, 462 U.S. 213, 235 (1983). Moreover, a judge reviewing a warrant application is free to draw "reasonable inferences" from "materials supplied to him by applicants for a warrant." Id. at 240.

Here, there is ample information in the Warrant Application to support Judge Longoria's conclusion that probable cause existed to arrest plaintiff. See Castillo, 866 F.2d at 1076. The statements in the Warrant Application establish: (1) Turner may have defrauded Countrywide when he secured the loans to complete the refinancing transaction, see Warrant App. Docs. at 36, 50, 59–60, 64; (2) plaintiff and Turner knew each other and plaintiff had assisted with or acted as Turner's broker in multiple real estate transactions, see Warrant App. Docs. at 36; (3) plaintiff may have been Turner's agent in the refinancing transaction or assisted him with the transaction, see Warrant App. Docs. at 36, 50; (4) plaintiff purchased the cashier's check used to close escrow on the refinancing transaction with money taken from his personal HELOC account, see Warrant App. Docs. at 36, 64, 65; (5) plaintiff denied purchasing the cashier's check using money from his personal HELOC account and suggested someone else must have

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|----------|---------------------|------|--------------|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

purchased the money order using funds from his account, see Warrant App. Docs. at 65; (6) plaintiff requested that the cashier's check be made out directly to the escrow company handling the refinancing transaction and asked that Turner be listed as the remitter of the cashier's check; see Warrant App. Docs. at 65; and (7) altered bank statements used to facilitate the refinancing transaction were faxed to Countrywide from plaintiff's business, Shay & Associates, see Warrant App. Docs. at 59.  Although each of these facts, alone, is not sufficient to establish probable cause that plaintiff may have committed a crime, when taken together with rational inferences, a reasonable "prudent person could conclude there is a fair probability that [plaintiff] had committed . . . a crime." Noster, 590 F.3d at 630 (explaining the probable cause standard); c.f. United States v. Fernandez, 388 F.3d 1199, 1253–55 (9th Cir. 2004) (discussing reasonable inferences a judge may draw from facts).  Accordingly, the Court concludes the information in the Warrant Application provides a substantial basis for Judge Longoria to conclude there was probable cause to arrest plaintiff. [7]

Moreover, even if the Court assumes there was not probable cause to issue the warrant and a constitutional violation occurred, the Court finds Deputy Derry is entitled to qualified immunity on this theory of liability because no reasonable officer would have believed there was no probable cause to arrest plaintiff, where the officer was in possession of a facially valid warrant issued by a neutral judge. See KRL, 512 F.3d at 1189.  The second step in the qualified immunity analysis requires the Court to ask whether the constitutional right Deputy Derry purportedly violated was clearly established. See Saucier, 533 U.S. at 201–02.  "The relevant, dispositive inquiry under

---

[7] Plaintiff presented evidence that Judge Vanderet determined at the Preliminary Hearing that there was insufficient evidence to hold plaintiff to answer the charges against him. See Second Prelim. Hr'g Trans. at 2:13–6:28.  The decision does not have any preclusive effect on this Court's determination of the probable cause issue in the present case. See People v. Esmaili, 213 Cal. App. 4th 1449, 1463 (explaining order dismissing criminal proceedings following preliminary hearings have no preclusive effect) (citations omitted); People v. Uhlemann, 213 Cal. App. 4th 1449, 1461 (1973) (noting dismissal of criminal complaint is not a valid determination on the merits of charges brought against defendant and does not bar another prosecution of the same offense).  Moreover, Judge Vanderet was able to hear witness testimony, and "weigh evidence, resolve conflicts, and give or withhold credence to a particular witness" at the Preliminary Hearing, whereas Judge Longoria based his decision solely on the information in the Warrant Application.  See Esmaili, 213 Cal. App. 4th at 1460.

| CIVIL MINUTES – GENERAL | | 'O'  JS-6 | |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

this second step is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See KRL, 512 F.3d at 1189; see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) ("the determination of whether the facts alleged could support a reasonable belief in the existence of probable cause . . . is. . . a question of law to be determined by the court") (citing Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

Plaintiff claims Deputy Derry cannot seek the protections of qualified immunity because a reasonable officer in the same circumstances could not have believed there were sufficient facts in the Warrant Application to provide probable cause to issue the warrant. But the facts and the law do not support plaintiff's position. Even if the Court accepts plaintiff's contention that the issue of probable cause is a close question, "the Supreme Court has recognized that reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause." KRL, 512 F.3d at 1189 (citation and quotation marks omitted). Thus, "inadequate probable cause for a warrant does not necessarily render an officer's reliance unreasonable because the existence of probable cause is often a difficult determination." Id. (citation and quotation marks omitted). "When reasonable minds could differ as to the existence of probable cause, approval of a warrant by a government attorney, and ratification by a neutral and detached [judge] usually establishes objectively reasonable reliance." Id. (citation and quotation marks omitted).

Additionally, plaintiff's assertion that the Warrant Application "was so lacking in indicia of probable cause" that it was entirely unreasonable for Deputy Derry to rely on the warrant is unpersuasive. As the Court previously discussed, the statements in the Warrant Application provide ample facts to permit a reasonably prudent person to conclude there was probable cause to arrest plaintiff for grand theft and forgery. Indeed, the uncontroverted evidence shows that both a government attorney and a neutral judge reviewed the Warrant Application independently and concluded there was probable cause to arrest plaintiff. See Warrant App. Docs. at 6–16; Dep. Trans. Deputy Derry at 158:4–23; Derry Decl. ¶ 11; dkt. 50-5, Decl. Deputy District Attorney Walter Mueller ("DDA Decl.") ¶¶ 7–13. Thus, Deputy Derry's submission of the Warrant Application and arrest of plaintiff pursuant to the warrant was objectively reasonable under the circumstances. See, e.g., Ortiz v. Van Auken, 887 F.2d 1366, 1370–71 (9th Cir. 1989) (holding it was reasonable for an officer to rely on a search warrant where "he properly sought to have his belief that there was probable cause reviewed by the . . . County District Attorney's office and then by a judge"). Accordingly, Deputy Derry is entitled to qualified

| CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

immunity as to plaintiff's Section 1983 claim premised on a violation of the Fourth Amendment for arresting plaintiff without probable cause.

### b.    Judicial Deception

Plaintiff also contends that Deputy Derry violated his Fourth Amendment rights through judicial deception. "By reporting less than the total story, an affiant can manipulate the inferences a [judge] will draw." United States v. Stanert, 762 F.2d 775, as amended, 769 F.2d 1410, 1410 (1985). "To allow a [judge] to be misled in such a manner could denude the probable cause requirement of all real meaning." Id. Thus, a Fourth Amendment violation may occur "where [an] affiant intentionally or recklessly omit[s] facts required to prevent technically true statements in [an] affidavit from being misleading." Id.

Plaintiff claims Deputy Derry submitted false statements in the Warrant Application, which, if omitted, would render it devoid of any basis upon which Judge Longoria could have determined there was probable cause for his arrest. See generally Castillo, 866 F.2d at 1078 (explaining that an otherwise valid search warrant may be rendered invalid if a defendant shows an affiant intentionally or recklessly included false statements in the application for a warrant). Accordingly, plaintiff contends, Deputy Derry cannot hide behind the protective shield of qualified immunity. Opp'n at 15; see generally Hervey v. Estes, 65 F.3d 784, 787 (9th Cir. 1995) (stating that in civil rights cases, if an officer submits an affidavit that contains statements he knows are false, and "no accurate information sufficient to constitute probable cause attended the false statements," the officer cannot be said to have acted reasonably, and, thus, "the shield of qualified immunity is lost").

"Governmental employees are not entitled to qualified immunity on judicial deception claims." Chism v. Washington State, 661 F.3d 380, 393 (9th Cir. 2011); see also Branch v. Tunnell, 937 F.2d 1382, 1387 (9th Cir. 1991) overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). Moreover, the Ninth Circuit has cautioned that summary judgment on the grounds of qualified immunity is inappropriate if a plaintiff makes out a claim for judicial deception. Id. Yet, it is only "objectively unreasonable for a law enforcement officer to deliberately or recklessly mistake facts material to the probable cause determination." Hervey v. Estes, 65 F.3d 784, 789 (9th Cir. 1995); see also KRL v. Moore, 384 F.3d 1105, 1117 (9th Cir. 2004) (emphasis added). Thus, to survive a motion for summary judgment on a defendant's

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|----------|--------------------|------|--------------|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

claim of qualified immunity, a plaintiff must "(1) make a "substantial showing" of deliberate falsehood or reckless disregard for the truth; and (2) establish that, but for the dishonesty, the challenged action would not have occurred." Hervey, 65 F.3d at 788–89 (citation omitted). "Put another way," a plaintiff must show "the remaining information in the affidavit is insufficient to establish probable cause." Id., 65 F.3d at 789 (explaining this standard is the same showing necessary to obtain an evidentiary hearing under Franks).

Plaintiff asserts that the following statement in the Warrant Application is false[8]:

Based on the records received from JP Morgan Chase Banks, Mara Escrow, and Bank of America, along with statements from the witnesses, it is apparent that Eddie Turner and Allen Shay acted in concert, and made materially false and fraudulent representations to Bank of America (formerly Countrywide Home Loans) in order to obtain a $1,000,000 loan and a $218,000 loan on [March 30, 2007].

Warrant App. Docs. at 64; see also Opp'n at 15. According to plaintiff, "redacting this one unsupportable conclusion from the arrest warrant declaration literally leaves nothing to support [plaintiff's] arrest." Opp'n at 15.

As an initial matter, plaintiff has not identified specific evidence that supports his claim that Deputy Derry deliberately or recklessly included false statements in the Warrant Application. See Liston, 120 F.3d at 973 (noting that a plaintiff asserting a judicial deception claim must demonstrate an officer acted deliberately or with reckless disregard for the truth in preparing an affidavit). Although plaintiff only has to make a "substantial showing" that Deputy Derry's statement was deliberately false or reckless at

---

[8] Plaintiff also asserts in his discovery responses that Deputy Derry's statements in the Warrant Application are misleading because Deputy Derry implies that plaintiff's providing Turner with funds to close the refinancing transaction could be the basis of criminal charges, "when that action had nothing to do with Turner's falsification of financial information." Pl.'s Responses to Def. Derry's Interrog. Set One at 8. It is unclear from plaintiff's discovery responses which statements he is referencing. Additionally, plaintiff did not address how Deputy Derry's statements were misleading in his opposition. See Opp'n at 14–15. Accordingly, the Court finds plaintiff has not satisfied the substantial showing requirement necessary to pursue this theory of liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'     JS-6

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|---|---|---|---|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

the summary judgment stage, he must point to some evidence in support of his assertion that the officer acted with deliberate or reckless disregard for the truth. See id.; see also Stanert, 762 F.2d at 781 (explaining the "substantial showing" standard does not require a plaintiff to set forth "clear proof of deliberation or recklessness"). The only support plaintiff provides for his allegation is that Deputy Derry's statement was "outrageous" and that Deputy Derry could not "back up" this statement when he took the witness stand at the Preliminary Hearing. Opp'n at 15. Plaintiff does not provide any further explanation or any citations to the record. Thus, the Court cannot determine whether plaintiff is referring to a particular statement Deputy Derry made during the hearing.[9] To the extent plaintiff is referring to the fact that, despite Deputy Derry's testimony, Judge Vanderet ultimately found there was insufficient evidence to require plaintiff to answer the criminal charges against him, the judge's ruling has no bearing on whether Deputy Derry intentionally or recklessly included false or misleading information in the Warrant Application.

Moreover, even if the statement plaintiff complains of was excised, the corrected Warrant Application would still have contained sufficient facts to permit a reasonable judge to determine there was a fair probability plaintiff committed grand larceny and forgery. See United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (noting the Ninth Circuit has alternatively defined probable cause as existing when, under the totality of the circumstances known at the time, a prudent person would have concluded there was a fair probability a defendant committed a crime). The materiality element requires plaintiff to demonstrate that Judge Longoria "would not have issued the warrant with false information redacted." Almada, 640 3d. at 937 (citing Lombardi v. City of El Cajon, 117 F.3d 1117, 1126 (9th Cir. 1997)). Whether false or misleading statements are material is a question of law for the court. See id.; see also Moore, 384 F.3d at 1105.

When the statement plaintiff finds objectionable is removed, the Warrant Application still contains the following facts: (1) Turner stated he subpoenaed records and determined the money used to purchase the cashier's check used as the earnest

_____

[9] The Court does not have a duty to search for evidence that would create a factual dispute. Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007). "It is unfair to require the district court to "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the moving papers with adequate references so that it [can] be conveniently found." Carmen v. Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

| | CIVIL MINUTES – GENERAL | 'O' | JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

money deposited toward the fraudulent loans originated from one of plaintiff's bank accounts; see Warrant App. Docs. at 36; (2) the loan officer from Countrywide that serviced the fraudulent loans stated plaintiff assisted Turner during the loan process, but he did not think plaintiff was acting as Turner's broker because, at the time, the bank was only dealing directly with clients; see Warrant App. Docs. at 50; (3) documents subpoenaed from JP Morgan showed that the cashier's check used to secure the loan was purchased with funds taken from plaintiff's personal HELOC account, see Warrant App. Docs. at 62; (4) the face of the cashier's check listed Mara Escrow as the payee and Turner as the remitter, see Warrant App. Docs. at 62; (5) counterfeit bank statements were faxed from plaintiff's business' fax number to Countrywide and the bank statements were used to secure the loans associated with the refinancing transaction, see Warrant App. Docs. at 59; and (6) when Deputy Derry told the teller that plaintiff had said he did not purchase the cashier's check and that money was taken from his account to cover the check without his knowledge or consent, the teller confirmed the signature on the withdrawal slip belonged to plaintiff, see Warrant App. Docs. at 65.

When these facts are taken together, with reasonable inferences to be drawn from them, a prudent person could conclude there was a fair probability that plaintiff committed the crimes. See United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). Thus, plaintiff has not satisfied his burden of proving the statements are material because the remaining facts do not mandate a conclusion that a "[judge] would not have issued the warrant." Almada, 640 3d. at 937. Therefore, the Court concludes plaintiff has not made out a claim for judicial deception. Accordingly, Deputy Derry is immune from liability as to plaintiff's claim that Deputy Derry violated his Fourth Amendment rights by filing a false and misleading application for warrant for plaintiff's arrest and filing an arrest warrant application without probable cause.

### c.    Defamation

Defendants move for summary judgment as to plaintiff's Section 1983 claim based on defamation on the basis that plaintiff has not proven a loss of a constitutionally protected property or liberty interest. MSJ at 6. A "defamation-plus" claim brought under Section 1983 requires a plaintiff to show damage to his or her reputation, as well as, an injury to a recognized property or liberty interest." Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir. 1991). A plaintiff may satisfy this requirement by proving one of two things: (1) the injury to his or her reputation was inflicted in connection with a federally protected right; or (2) the injury to his or her reputation caused the denial of a

federally protected right. See Herb Hallman Chevrolet v. Nash-Holmes, 169 F.3d 636, 645 (9th Cir. 1999); see also Gobel v. Maricopa Cnty., 867 F.2d 1201, 1205 (9th Cir. 1989).

As the Court reads plaintiff's defamation claim, he argues Deputy Derry's inclusion of "false" statements in the Warrant Application and the press release issued after his "false arrest" were defamatory. Opp'n at 17. Injuries inflicted "in connection" with the deprivation of a federal right include defamatory statements concerning an unconstitutional arrest. Cooper, 924 F.2d at 1532 (citing Stevens v. Rifkin, 608 F. Supp. 710, 727 (N.D. Cal. 1984)). And false statements made in connection with an illegal arrest may give rise to a compensable Section 1983 claim. See Gobel v. Maricopia Cnty., 867 F.2d 1201, 1205 (9th Cir. 1989), abrogated on other grounds by Merritt v. Cnty. of Los Angeles, 875 F.2d 765 (9th Cir. 1989). Thus, plaintiff has pled a viable Section 1983 claim based on defamation. See Herb Hallman Chevrolet, 169 F.3d at 645 (recognizing statements made in connection with indictments and arrests for which there was no probable cause give rise to a tenable Section 1983 claim). Plaintiff's claim fails, however, because there was no Fourth Amendment violation and, alternatively, Deputy Derry is entitled to qualified immunity. See Lindsey v. Shalmy, 29 F.3d 1382, 1384–85 (9th Cir. 1994) (upholding district court's decision that a defendant was entitled to qualified immunity as to a plaintiff's Section 1983 defamation-plus claim).

As explained above, the statement plaintiff takes issue with is immaterial to the Warrant Application. Moreover, as previously noted, the Warrant Application contained sufficient facts for Judge Longoria to find there was probable cause for plaintiff's arrest. Accordingly, plaintiff's claim fails because there is no violation of his Fourth Amendment rights.

Additionally, even if plaintiff's arrest was invalid, Deputy Derry is entitled to qualified immunity. Plaintiff submitted evidence that the press release contained statements that claim: (1) plaintiff and Turner allegedly submitted a counterfeit bank statement in connection with the refinancing transaction; (2) plaintiff and Turner misrepresented the "source of a $29,916 down payment which was deposited into escrow to obtain" the loans used in the refinancing transaction; and (3) plaintiff and Turner fraudulently obtained loans totaling $2,364,000. Press Release at 1. But even if the Court assumes the statements could be read as defamatory, the facts of this case lead the Court to conclude that no reasonable officer would have believed he did not have authority to issue a press release discussing the allegations against plaintiff on the day

| | CIVIL MINUTES – GENERAL  'O'  JS-6 | | |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

plaintiff was arrested pursuant to a facially valid warrant issued by a neutral judge.  <u>See</u> <u>Saucier</u>, 533 U.S. at 201 (emphasizing that the inquiry into whether a law is clearly established is undertaken in light of the specific context of a case, rather than as a broad general proposition).  Accordingly, Deputy Derry is entitled to qualified immunity as to plaintiff's claim that Deputy Derry violated his Fourth Amendment rights by issuing a defamatory press release.

## 2.    Fourteenth Amendment

The Fourteenth Amendment protects against deprivations of liberty accomplished "without due process of law."  <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979).  Plaintiff contends Deputy Derry violated the Fourteenth Amendment when he filed a false declaration that caused plaintiff to be incarcerated for a prolonged period and caused plaintiff's malicious prosecution.

## a.    Post Arrest Incarceration

Plaintiff contends his due process rights were violated because Deputy Derry "maliciously submitted a false declaration to obtain a court order putting a no-bail hold" on plaintiff, resulting in plaintiff remaining incarcerated for eleven days despite his ability to post bail.  Opp'n at 18.  Post-arrest incarceration is analyzed under the Fourteenth Amendment.  <u>See</u> <u>Rivera v. Cnty. of Los Angeles</u>, 745 F.3d 384, 390 (9th Cir. 2014); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 683–85 (9th Cir. 2001) (separately analyzing an initial arrest under the Fourth Amendment and the post-arrest incarceration under the Fourteenth Amendment)).  Liberty interests protected by the "Fourteenth Amendment may arise from two sources —the Due Process Clause itself and the laws of the States."  <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992).  "State laws create a protected liberty interest by placing substantive limitations on official discretion."  <u>Id.</u> (citation omitted).  But, this only occurs where a state law directs that a "given action will be taken or avoided only on the existence or non-existence of specified substantive predicates."  <u>Id.</u>

The Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction.  <u>Id.</u> (citing <u>Baker</u>, 443 U.S. at 144). In California, a defendant charged in a non-capital offense has a constitutional right to bail, subject to well-delineated exceptions that are not relevant to this action.  <u>See</u> Cal. Const. art 1, § 12 (1994).  Where a criminal defendant is charged in a non-capital offense

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

by information or complaint rather than indictment, the defendant is entitled to a bail hearing.  See Clark v. Superior Court, 11 Cal. App. 4th 455, 458 (1992); see also Cal. Penal Code § 190.2 (2000); Cal. Const. Art. 1 § 12.  Thus, plaintiff has a colorable claim that he had a protected liberty interest in being free from extended incarceration without being offered the opportunity to post bail.  See generally Oviatt, 954 F.2d at 1474 (noting "when a state creates a liberty interest, it must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated").

Here, the facts show defendants did not arbitrarily abrogate any liberty interest plaintiff may have had in not being subjected to prolonged incarceration without the opportunity to post bail.  California Penal Code Section 1275.1 permits a prosecutor or police officer to file a declaration requesting that a court place a hold on a suspect's ability to post bail, where the suspect is arrested for certain crimes involving illicitly obtaining money, such a theft, until a judge finds that no portion of the money was feloniously obtained.  If the judge does not act on the order within 24 hours of its submission, a suspect must be released from custody upon posting the amount of bail set.  Cal. Penal Code § 1275.1(g).  Once the hold is placed, a suspect will not be released on bail until he or she can prove, by a preponderance of the evidence, that the bail money to be used is from a legitimate source.  Cal. Penal Code § 1275.1(c).  The court typically sets a hearing to determine whether the hold may be removed.  Where, as here, a motion to release a Section 1275 hold is filed, local rules typically dictate the timing of when the hearing must occur.

In the context of a Section 1983 lawsuit against police officers for a due process violation, "official conduct violates due process only when it shocks the conscience." Tatum v. Moody, 768 F.3d 806, 817 (9th Cir. 2014).  An officer's actions "shocks the conscience" when the officer "either consciously or through complete indifference disregards the risk of an unjustified deprivation of liberty."  Id.  "Where actual deliberation is practical, then an officer's deliberate indifference may suffice to shock the conscience."  Id.  "Deliberate indifference is the conscious or reckless disregard of the consequences of one's act or omissions.  It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or knowing that harm will result."  Id. (citing Gantt v. City of Los Angeles, 717 F.3d 702, 707 (9th Cir. 2013)).

Plaintiff asserts Deputy Deering was deliberately indifferent when he "maliciously submitted a false declaration" to obtain a court order putting plaintiff on a no-bail hold.

**CIVIL MINUTES – GENERAL**       **'O'    JS-6**

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|----------|--------------------|----|---------------|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

Opp'n at 18.  But, plaintiff has not set forth any evidence that Deputy Derry's actions were malicious or false.  Rather, the testimony plaintiff cited from Deputy Derry indicates Deputy Derry submitted the declaration because it was "a countywide practice to file an ex parte motion to examine the source of bail funds in all felony theft cases where there is a significant loss."  Dep. Trans. Deputy Derry, 144:20–45:6.  As Deputy Derry explained, "in felony theft cases where there is a significant loss, you want to make sure that none of the assets that were erroneously obtained are used for the purposes of bail."  Dep. Trans. Deputy Derry 145:1–6; accord People v. Ind. Lumbermens Mut. Ins. Co., 192 Cal. App. 4th 929, 937 (2011) (explaining that the purpose of California Penal Code § 1275.1, which sets forth procedures permitting an officer to file a declaration in support of a bail hearing determining the source of funds, is to "ensure release on bail is not secured by way of feloniously obtained funds").  Deputy Derry also testified that his basis for indicating on the form that he believed plaintiff had access to significant amounts of money feloniously obtained from theft was, in part, based on the fact that Turner paid plaintiff over $50,000 for providing the cashier's check Turner used to close the refinancing transaction.[10]

Even when viewed in the light most favorable to plaintiff, Deputy Derry's statements, particularly when coupled with the fact that plaintiff was arrested pursuant to a warrant issued by a neutral judge on charges of grand theft, a reasonable factfinder could not find that Deputy Derry intentionally or recklessly subjected plaintiff to post-arrest incarceration without any regard for the consequences.  Moreover, Deputy Derry's decision to submit the declaration did not violate plaintiff's due process protections because California law permits officers to request bail holds for suspects arrested for grand theft.  Indeed, Penal Code § 1275.1 permits officers to file a declaration under the exact circumstances present in this case.  Additionally, plaintiff's own version of the facts demonstrates he appeared before Judge Vanderet within eleven days of his arrest, which accords with California's established procedural requirements for Section 1275 holds.  Thus, Deputy Derry is entitled to summary judgment as to plaintiff's claim for unlawful prolonged post-arrest incarceration.

---

[10] The Court notes that Deputy Derry also provided additional testimony explaining his rationale for indicating in the declaration that he believed plaintiff may have access to significant amounts of money feloniously obtained by theft, but plaintiff omitted some pages of the deposition transcript addressing this issue, so the Court cannot review Deputy Derry's full statement.  See Dep. Trans. Deputy Derry 145:15–25.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'     JS-6

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|---|---|---|---|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

### b.     Malicious Prosecution

A criminal defendant may maintain a malicious prosecution claim against police officers or investigators who wrongfully caused his prosecution. Almada, 640 F.3d at 938. "To maintain a Section 1983 action for malicious prosecution, plaintiff must show that [Deputy Derry] caused his prosecution with malice and without probable cause, and that [he] did so for the purpose of denying [him] a constitutional right." Id. (citing Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)).

Defendants contend Deputy Derry is entitled to summary judgment as to this cause of action because plaintiff has not presented any evidence that Deputy Derry acted with malice in submitting the Warrant Application. Defendants have also presented evidence that Mueller: (1) reviewed and signed the Warrant Application; (2) determined which supporting documents should be included in the Warrant Application; and (3) personally examined the reports and documents Deputy Derry maintained regarding his investigation into plaintiff's wrongdoing. DDA Decl. ¶¶ 7–13; Dep. Trans. Deputy Derry 144:20–45:6. Defendant's evidence also shows that Mueller independently determined there was sufficient evidence to provide probable cause for an arrest and to prove, beyond a reasonable doubt, that plaintiff committed the crimes. DDA Decl. ¶¶ 10–13.

Mueller's filing a criminal complaint also gives rise to a presumption that the decision to file the complaint resulted from his independent decision and would preclude liability for Deputy Derry, who participated in the investigation and filed a report. See Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981) ("Smiddy I") overruled on other grounds by Beck v. City of Upland, 527 F.3d 853, 865 (9th Cir. 2008)). However, this Smiddy presumption can be rebutted where an investigating official "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004) (applying Smiddy I presumption to malicious prosecution case). A "plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment." Newman v. Cnty. of Orange, 457 F.3d 991, 994 (9th Cir. 2006). The Ninth Circuit has further explained the type of evidence that will suffice to overcome the presumption.

For example, in Borunda v. Richmond, 885 F.2d 1384 (9th Cir. 1988), the Ninth Circuit found that the plaintiff had rebutted the presumption of independent judgment

| | CIVIL MINUTES – GENERAL  'O'  JS-6 | | |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

where the defendant officers "procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney." Id. at 1390; see also Blankenhorn v. City of Orange, 485 F.3d 463, 483–84 (9th Cir. 2007) (finding summary judgment improper where evidence demonstrated that the prosecutor had not viewed a key videotape prior to filing charges, and other evidence demonstrated that the officers' reports were false and misleading); Newman, 457 F.3d at 995 ("Because [the plaintiff] had no evidence of material omissions, or inconsistent police or eyewitness accounts, he could not demonstrate a genuine issue of material fact as to whether the prosecutor exercised independent judgment. Summary judgment for the defendant officers was therefore appropriate." (citing Sloman v. Tadlock, 21 F.3d 1462, 1474 (9th Cir. 1994))); Barlow v. Ground, 943 F.2d 1132, 1136–37 (9th Cir. 1991) (civil rights plaintiff overcame the Smiddy presumption where the prosecutor relied solely on the arresting officers' reports, which omitted critical information, an independent witness corroborated at least part of plaintiff's version of events, and the officers' accounts varied).

Although plaintiff does not directly address this issue, he implicitly argues the Smiddy presumption does not apply because he contends Deputy Derry included false information in the Warrant Application that led to his wrongful arrest. Opp'n at 11–13. The only support plaintiff has provided for this contention is that one passage Deputy Derry included in the Warrant Application is objectionable. See Warrant App. Docs. at 64; Opp'n at 15. As noted above, the Court finds the statement plaintiff complains of immaterial because even if the statement is excised, the Warrant Application still contains sufficient information for Judge Longoria to have determined there was probable cause to believe that plaintiff committed grand larceny and forgery. Accordingly, plaintiff has not successfully rebutted the Smiddy presumption and the Court finds Mueller's independent determination there was probable cause to arrest and prosecute plaintiff for grand theft and larceny broke the causal chain between any unconstitutional actions Deputy Derry may have taken and the harm plaintiff allegedly suffered. Thus, Deputy Derry is entitled to summary judgment as to plaintiff's Section 1983 claim for malicious prosecution.

### c. Violation of Equal Protection Rights

"A government entity has discretion in prosecuting its criminal laws, but enforcement is subject to constitutional constraints." Rosenbaum v. City & Cnty. of San Francisco, 484 F.3d 1142, 1152 (9th Cir. 2007). "To prevail on a claim brought under the equal protection clause of the Fourteenth Amendment, a plaintiff must demonstrate

| | CIVIL MINUTES – GENERAL | 'O' | JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

that enforcement had a discriminatory effect and the police were motivated by discriminatory purpose." Id. "To establish a discriminatory effect," a plaintiff must "show that similarly situated individuals . . . were not prosecuted." Id. (citing United States v. Armstrong, 517 U.S. 456, 465 (1996)). A plaintiff must show that the decision-maker "selected or affirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group of people" to establish a discriminatory purpose. Id. (citing Wayte v. United States, 470 U.S. 598, 608 (1985)).

Plaintiff's equal protection claim is grounded in his assertion that he and Gleason were similarly situated, but only he—not Gleason—was arrested. FAC ¶¶ 37–38. Plaintiff does not allege that Gleason committed a crime or that Gleason should have been charged or arrested. Id. ¶ 38. Rather, plaintiff asserts that he and Gleason both had dealings with Turner related to the refinancing transaction, so they sat in similar positions with respect to the transaction. Despite this similarity, however, only plaintiff was arrested. Thus, according to plaintiff, the sole reason he was treated differently from Gleason is because he is African-American and Gleason is white. Id. ¶¶ 37–38. In plaintiff's view, Deputy Derry acted on a racist assumption that because both plaintiff and Turner are African-American, they acted in concert to violate criminal statutes. Id. ¶ 38.

Defendants contend Deputy Derry is entitled to summary judgment as to this cause of action because plaintiff cannot establish that Gleason committed any crime or that Deputy Derry had probable cause to suspect Gleason committed a crime. MSJ at 9. Defendants also assert that plaintiff has not set forth any evidence—other than his own speculation and conjecture—that Deputy Derry acted with improper racial animus or discriminatory purpose or motivation. MSJ at 9. Plaintiff did not specifically address his equal protection claim in his opposition, or oppose defendants' assertions. See Opp'n at 10–16. He also did not submit any evidence, other than his own testimony, in support of this claim.

As discussed above, when the statement plaintiff complains of is redacted from the Warrant Application, the application still contained sufficient facts for Judge Longoria to have found there was probable cause for plaintiff's arrest. Plaintiff confirmed at the hearing on the MSJ that he does not contend Gleason committed a crime or there was probable cause to arrest Gleason. Thus, plaintiff and Gleason were not similarly situated. Accordingly, even when viewing the evidence in the light most favorable to plaintiff, a reasonable fact finder could not find Deputy Derry violated plaintiff's equal protection

rights. Therefore, Deputy Derry is entitled to summary judgment as to plaintiff's Section 1983 claim for violation of plaintiff's equal protection rights.

In light of the foregoing, the Court **GRANTS** defendants' motion for summary judgment as to all of plaintiff's Section 1983 claims against Deputy Derry because Deputy Derry had probable cause to arrest plaintiff, his actions did not violate plaintiff's Fourth Amendment or Fourteenth Amendment rights, and he is immune from suit.

### B.     Monell Claim (The County and LACSD)

Local government entities, including counties and their sheriff's departments, may be sued directly under Section 1983 when their policies or customs are the moving force behind a constitutional violation. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978); see also Rivera, 745 F.3d at 389. To establish liability for governmental entities under Monell, "a plaintiff must prove (1) that [he] possessed a constitutional right of which [he] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quotation marks omitted).

To establish Section 1983 municipal liability, [a] plaintiff must satisfy one of three conditions: "(1) prove a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy; or (3) prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted).

Plaintiff contends the LACSD's practice of filing a boilerplate declaration to request a bail hearing in all felony theft cases is unconstitutional. See Opp'n at 19. Plaintiff has not pointed to any formal policy the LACSD has adopted which reflects this practice. Plaintiff also does not allege and has not set forth any evidence that establishes that Deputy Derry has any final policy-making authority. Absent a formal government policy, plaintiff must show a "longstanding practice or custom which constitutes the

| CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|---|---|---|---|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

standard operating procedure of the local government entity." Trevino, 99 F.3d at 918. To satisfy this burden, plaintiff must show the custom is so "persistent and widespread" that it constitutes a "permanent and well-settled policy." Id. "Liability for improper custom may not be predicated on isolated or sporadic events." Id. Rather, it must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id.

As an initial matter, the Court finds plaintiff cannot prove this claim because the Court granted summary judgment as to all claims against Deputy Derry. Accordingly, plaintiff cannot establish Deputy Derry committed a constitutional violation pursuant to one of LACSD's policies.

Additionally, the Court finds plaintiff cannot make the requisite showing that the LACSD had a well-established policy of filing boilerplate declarations to request a bail hearing in all felony theft cases. The only evidence plaintiff has produced in support of his position is testimony from Deputy Derry that it is a countywide practice to file a declaration in support of an ex parte motion to examine the source of bail funds in all felony theft cases where there is a significant loss. Dep. Trans. Deputy Derry, 144:20–45:6. Viewing plaintiff's evidence in the light most favorable to him, it "falls far short of establishing a persistent and widespread practice such that it constitutes [a] permanent and well settled" LACSD policy. Trevino, 99 F.3d at 919. The record is devoid of any instances in which the LACSD has allegedly filed a boilerplate declaration in support an ex parte motion to examine the source of bail funds in felony theft cases or that the declarations, if any, were unsupported by probable cause. Plaintiff has also not presented any evidence from anyone other than Deputy Derry that this alleged custom or policy exists. Accordingly, plaintiff has not established a prima facie claim for municipal liability against the County or the LACSD.

Moreover, even if plaintiff could demonstrate the LACSD has such a policy, plaintiff cannot prove the policy deprived him of a constitutional right. As discussed above, California law permits officers and prosecutors to request a bail hearing under the circumstances present in this case.

Thus, the Court **GRANTS** defendants' motion for summary judgment at to plaintiff's municipal liability claim against the County and LACSD.

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 | |
|---|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 | |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | | |

**C. Deprivation of Rights under California Civil Code § 52.1 (all defendants)**

California Civil Code Section 52.1 establishes a private right of action for damages and other relief against a person who interferes, or attempts to interfere, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of his or her constitutional or other legal rights. Cal. Civ. Code § 52.1(a),(b). There are two distinct elements to a Section 52.1 claim: (1) intentional interference or attempted interference with a state or federal constitutional or legal right; and (2) interference or attempted interference by threat, intimidation, or coercion. See Allen v. City of Sacramento, 234 Cal. App. 4th 41, 67 (2015). The statute requires a showing of threatening conduct independent from the alleged interference or violation of a civil right. See Shoyoye v. Cnty. of Los Angeles, 203 Cal. App. 4th 947, 959 (2012); see also Allen, 234 Cal. App. 4th at 41. However, the statute does not require violence or threat of violence. Moreno v. Town of Los Gatos, 267 F. App'x. 665, 666 (9th Cir. 2008).

The crux of Plaintiff's Bane Act claim is that defendants violated his Fourth Amendment rights to be free from unlawful seizure without probable cause when they "arrested and jailed [him] for eleven days without probable cause and based on lies about his having access to stolen money." Opp'n at 20. As noted above, the Court concludes, even when the language plaintiff complains of is excised from the Warrant Application, a reasonable judge could have determined there was probable cause to arrest plaintiff. This ruling necessarily implies defendants did not violate plaintiff's right to be free of unlawful seizure under the California Constitution because plaintiff has not accused defendants of violating any state constitutional right that is separate from his federal constitutional rights. See Reynolds v. Cnty. of San Diego, 84 F.3d 1162, 1170–71 (9th Cir. 1996) (dismissing a plaintiff's Section 52.1 cause of action where the plaintiff did not allege the defendant violated any state constitutional rights that were separate and distinct from federal protections) overruled on other grounds by Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997).

Because plaintiff cannot establish an essential element of his Bane Act claim, the Court **GRANTS** defendants' motion for summary judgment as to this cause of action.

| | CIVIL MINUTES – GENERAL | 'O' | JS-6 | |
|---|---|---|---|---|
| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 | |
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | | |

### D.    False Imprisonment

In California, the elements for false imprisonment are: (1) the nonconsensual, intentional confinement of a person; (2) without lawful privilege; (3) for an appreciable period of time, however brief.  Blaxland v. Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1205 (9th Cir. 2003).  Defendants are not liable for false imprisonment with respect to plaintiff's initial arrest because, as noted above, even when the language plaintiff complains of is excised from the Warrant Application, there is sufficient information to determine there was probable cause to arrest him.  See George v. City of Long Beach, 973 F.2d 706, 710.

Moreover, California Civil Code § 43.55 provides immunity to and "precludes actions against any peace officer who makes an arrest pursuant to a warrant of arrest[,] regular upon its face[,] if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant."  Lopez v. City of Oxnard, 207 Cal. App. 3d 1, 7 (1989).  Similarly, Penal Code § 847 "precludes actions for civil liability against any peace officer for false imprisonment if he was acting within the scope of his authority and the arrest was lawful, or at the time of the arrest, the officer had reasonable cause to believe the arrest was lawful."  Id.  As discussed above, there is no evidence that Deputy Derry acted with malice towards plaintiff.  Additionally, the evidence shows that Deputy Derry acted reasonably under the circumstances in arresting plaintiff, as the warrant was facially valid and was issued by a neutral judge.  Accordingly, Deputy Derry is immune from liability and is entitled to summary judgment as to plaintiff's false imprisonment claim.

## V.    CONCLUSION

In accordance with the foregoing, on the basis of qualified immunity and lack of violation of constitutional rights, the Court **GRANTS** defendants' motion for summary judgment as to all of plaintiff's Section 1983 claims against Deputy Derry.

The Court **GRANTS** defendants' motion for summary judgment as to plaintiff's municipal liability claim against the County and LACSD because plaintiff cannot establish these defendants had a policy of submitting boilerplate declarations for bail holds or that the policy violated his constitutional rights.

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 2:15-cv-4607(RAOx) | Date | June 5, 2017 |
|----------|--------------------|------|--------------|
| Title | ALLEN SHAY v. COUNTY OF LOS ANGELES ET AL. | | |

The Court also **GRANTS** defendants' motion for summary judgment as to plaintiff's Bane Act claim against defendants because there was probable cause to arrest plaintiff.

Finally, the Court **GRANTS** defendants' motion for summary judgment as to plaintiff's false imprisonment claim against Deputy Derry because there was probable cause to arrest plaintiff and Deputy Derry is immune from liability for this claim.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |